IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DIA ARMON WALTON, #181 554,        )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CASE NO. 2:19-CV-713-MHT-CSC
                                   )              [WO]
CORIZON MEDICAL, et al.,           )
                                   )
        Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.      INTRODUCTION

*Pro se* Plaintiff Dia Walton ["Walton"] files this 42 U.S.C. § 1983 action for

damages and injunctive relief challenging the adequacy of medical care and treatment he

received during his incarceration at the Staton Correctional Facility ["Staton"] in Elmore,

Alabama. Walton names as defendants Corizon, LLC ["Corizon"], and Certified

Registered Nurse Practitioners Laura Driggers ["Driggers"] and Domineek Guice

["Guice"].

Defendants filed an Answer, Written Report with supplement, and supporting

evidentiary material addressing Walton's claims for relief. Docs. 17, 20.[1] In these

documents, Defendants deny they acted in violation of Walton's constitutional rights and

maintain he received appropriate medical treatment at all times relevant to the claims

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this
Court in the docketing process.

presented. *See* Docs. 17-1, 17-6.  Defendants also argue this matter is due to be dismissed because Walton failed to exhaust an administrative remedy available to him through the prison system's medical provider regarding his claims prior to filing the Complaint. Doc. 13; *see also* Doc. 20-1 (*Affidavit of Darryl Ellis, RN, HSA*).  *See Jones v. Bock*, 549 U.S. 199, 202 (2007) (finding that the Prison Litigation Reform Act ("PLRA") requires "inmates complaining about prison conditions exhaust prison grievance remedies before initiating suit.").  Defendants base their exhaustion defense on Walton's failure to comply with the institutional medical provider's grievance procedure regarding the claims presented.  Doc. 20-1.

Upon receipt of Defendants' Answer, Written Report, as supplemented, and evidentiary submissions, the Court issued an Order on December 16, 2019, providing Walton an opportunity to file a response to these documents. Doc. 21. This Order directed Walton  to address Defendants' argument that  "he failed to exhaust his available administrative remedies . . . as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") [prior to filing this federal civil action]." Doc. 21 at 1 (footnote omitted). The Order also advised Walton his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials and informed him that unless "sufficient legal cause" is shown within ten days of entry of the Order why such action should not be undertaken, the Court may at any time after expiration of the time for his filing a response as allowed by the December 16 Order and without further notice to the parties (1) treat the written report with supplement and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as

allowed by said Order, rule on the motion in accordance with law. Doc. 21at 3–4. Walton filed responses to Defendants' written report and supplement wherein he focuses primarily on Defendants' argument that he failed to exhaust administrative remedies before filing suit. Docs. 22, 23. This case is now pending on Defendants' dispositive motion. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the undersigned recommends Defendants' motion for summary judgment (Doc. 17) be resolved in their favor.

## II.   EXHAUSTION

### A.   Standard of Review

Walton asserts Defendants acted with deliberate indifference to his medical needs after he injured his leg on March 2, 2018, while at trade school. Defendants deny they provided Walton inadequate medical care for his leg injury. In addition, they argue Walton failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Specifically, Defendants maintain Walton failed to exhaust the administrative remedies available to him through the institution's contract medical provider. Doc. 13 at 26; Doc. 20-1.

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a § 1983 action.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust

irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

"[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016). However, "[a] prisoner need not exhaust remedies if they are not available." *Id*. at 635 (internal quotation marks omitted). Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,[or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings." *Id.* at 90–91. Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88.

### B.       The Administrative Remedy Process

Wexford, as the current health care provider for the Alabama Department of Corrections ("ADOC"), provides a grievance procedure for inmate complaints related to the provision of medical treatment. Doc. 20-1 at 2, 4. Walton argues that Defendants' evidence fails to demonstrate how inmates are made aware of the administrative remedy process and how they could obtain a grievance form to so. Doc. 22. Walton also states that Corizon was the contract medical provider when he filed his Complaint on September 25, 2019, but Defendants only submitted the grievance policy of the medical provider which currently holds the contract—Wexford Health Sources. *Id.* However, Defendants' evidence reflects that from November 1, 2017, to March 31, 2018, Corizon was the contract medical provider for inmates in custody of the ADOC. Doc. 20-1 at 1–2. Wexford Health Sources, Inc., has held the contract since April 1, 2018. *Id.* Thus, Corizon was the contract medical provider at the time Walton suffered his injury—not when he filed the Complaint—and remained so for about thirty days thereafter.

Darryl Ellis, the Health Services Administrator ["HSA"] at Staton, testifies that he reviewed the facility's grievance files and determined that at no time did Walton file a medical grievance regarding the claims presented in the Complaint. Doc. 20-1 at 2–3. Attached to HSA Ellis' affidavit is Wexford's grievance policy outlining the procedure for inmates who seek to file a grievance related to any aspect of their health care. *Id.* at 4. Wexford's grievance policy explains, in part, that inmates receive oral and written guidelines regarding the grievance mechanism during the intake and inmate orientation stage. *Id.*

Walton has submitted a response and sworn affidavit and also submitted sworn affidavits from inmates Renard Tucker and Timothy Dumas. Docs. 22, 23. In their affidavits, inmates Tucker and Dumas make conclusory statements regarding the lack of grievance forms and the failure to post notice of the grievance procedure at Elmore or Staton at times when these inmates were incarcerated at the facilities, but they do not testify to being unaware of the administrative remedy. Doc. 23 at 3, 5. The affidavits of inmates Tucker and Dumas do not indicate they had any personal knowledge of Walton's awareness of a grievance process during the time relevant to the Complaint. *See* Rule 56(c)(4), Federal Rule of Civil Procedure ("An affidavit or declaration used to support or oppose a motion ... be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1217 (11th Cir. 2000) (noting that conclusory allegations without specific supporting facts have no probative value); *Marceau v. Int'l Brotherhood of Elec. Workers*, 618 F.Supp.2d 1127, 1163 (D. Ariz. 2009) (finding that "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient."); *Shaw v. Coosa County Comm'n*, 434 F. Supp. 2d 1196, 1198 (M.D. Ala. 2005) (noting that Rule 56(e) "make[s] it plain that affidavits which set forth conclusory arguments, rather than statements of fact based on personal knowledge, are improper").

Walton argues Defendants' exhaustion argument is insufficient because they failed to identify the procedure by which inmates are made aware of Wexford's medical grievance procedure—presumably other than at the intake and orientation stage—and

because they did not submit any documentation regarding the availability of an administrative remedy when Corizon was the contract medical provider and how, or whether, Corizon made inmates aware of any such procedure. Doc. 22. In his affidavit, Walton testifies he submitted many sick calls but was never told about a grievance procedure or referred to HSA Ellis for a grievance form nor were there forms in the dorms, cubicles, shift offices, or healthcare unit. Doc. 23 at 4. Walton also testifies he was not made aware that Wexford became the new contract healthcare provider for the ADOC. *Id.* Defendants do not argue that Walton was aware of a grievance procedure during his incarceration at Staton or address how he should have known about the medical grievance process and HSA Ellis' testimony indicates only that he reviewed the grievance files and found no grievance filed by Walton and that an administrative remedy is available. Doc. 13; Doc. 20-1.

Although the record establishes that Wexford provides an administrative grievance procedure, it is unclear on this record that Walton was aware or made aware of Wexford's procedures. Further, no evidence has been submitted regarding the availability of an administrative remedy process while Corizon was the contract medical provider. Because the Court concludes that Walton has failed to demonstrate a disputed issue of fact with respect to his claims of deliberate indifference to his medical care and treatment, the undersigned declines to engage in further discussion of whether the claims for relief presented in this matter are subject to dismissal based on Walton's failure to exhaust an available administrative remedy.

### III.   STANDARD OR REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

When Defendants meet their evidentiary burden, as they have, the burden shifts to Walton to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting

materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this Court should accept as

true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the Court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this

Court disregard elementary principles of production and proof in a civil case. Here, Walton fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## IV.    FACTUAL BACKGROUND

Walton claims Defendants failed to provide him with constitutionally adequate medical care and treatment for an injury to his leg.  According to the Complaint, while working at trade school Walton cut his leg. He was transported to an outside hospital for treatment where he received five stitches "from the inside out."  Walton alleges he was denied therapy and maintains his wound was not re-sutured after his stitches broke. Walton asserts he has experienced pain and discomfort for years but has not been allowed to see a specialist. Doc. 1 at 3.

 Defendants' evidence includes affidavits from Defendants Laura Driggers and Domineek Guice and Walton's relevant institutional medical records. Docs. 17-1–17-6. Defendants Driggers and Guice are Certified Registered Nurse Practitioners ("CRNP") and currently employed by Wexford Health Sources, Inc. ("Wexford"). Doc. 17-1 at 2; Doc. 17-6 at 2. While Wexford is the current employer of Defendants Driggers and Guice, they were previously employed by Corizon, the contract medical provider which provided healthcare for inmates in custody of the Alabama Department of Correction's ("ADOC") from November 1, 2007, through March 31, 2018. *Id*. Since April 1, 2018, Wexford has held the contract with the ADOC to provide medical care to inmates in its custody. *Id.* In their affidavits, Defendants Driggers and Guice provide testimony and reference Walton's

medical records regarding his injury and the medical treatment provided. Docs. 17-1, 17-6.

A complaint filed under § 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no dispute that Defendants acted under color of state law when treating Walton due to Defendants Driggers' and Guice's acknowledged status as nurses employed at Staton and Corizon's acknowledged status as the contract medical provider for inmates in custody of the ADOC during part of the time relevant to the allegations in the Complaint.

Defendants' evidence reflects that on March 2, 2018, Walton was taken to the healthcare unit at Staton for treatment of his right leg which had been caught by a grinder. Doc. 17-1 at 2–3; Doc. 17-6 at 2–3. The nurse on duty observed a large wound to Walton's right leg with moderate bleeding. Doc. 17-1 at 3; Doc. 17-6 at 3. Walton was transported to the emergency room at Jackson Hospital in Montgomery, Alabama, where physicians sutured the laceration and prescribed him Keflex and Neopsorin. *Id.* That same day Walton was returned to Staton and was seen and evaluated by Defendant Driggers. *Id.* Medical personnel scheduled Walton for a wound check-up on March 4, 2018. *Id.* Defendant Driggers explains:

> On March 5, 2018, orders were written by [] me, whereby Mr. Walton was provided crutches and was given certain limited profiles such as no sports and a bottom bunk profile. I noted that Mr. Walton was to return to the health care unit the following Friday to have his sutures removed.

Mr. Walton's chart from March 14, 2018 indicates that Mr. Walton was seen by Charlie Waugh, CRNP. Mr. Waugh noted that Mr. Walton came to the health care unit to be seen for a follow-up for his right leg wound. Mr. Waugh's notes indicate that Mr. Walton missed his appointment on Monday, March 12, as he was too tired to attend his previous appointment. Mr. Waugh noted that Mr. Walton informed him that his leg wound was still draining. Mr. Waugh also noted that the laceration to Mr. Walton's right thigh was healing well.

Mr. Waugh also noted that Mr. Walton was walking with crutches, although the wound on Mr. Walton's right leg showed no inflammation or drainage. Mr. Waugh instructed Mr. Walton to keep the wound clean and dry and to have the dressing changed twice daily.

Mr. Walton completed a sick call request on June 19, 2018, indicating that he was experiencing numbness and burning in the leg where the wound was received.

Mr. Walton was seen and evaluated on June 21, 2018. Mr. Walton complained to the nurse that he was experiencing soreness and tenderness in his right leg. The nurse noted no edema and no redness to Mr. Walton's leg and stated that the leg was normal in color.

Mr. Walton was again seen by CRNP Charlie Waugh on June 26, 2018. Mr. Waugh noted that Mr. Walton's gait was normal and that the scar to his right thigh was well healed.

The medical chart reveals that Domineek Guice CRNP saw Mr. Walton on October 1, 2018. Mr. Walton reported to Nurse Guice that he injured his leg approximately six months prior from a grinder and that he was "rushed to the hospital and had to put in five layers of stiches." Mr. Walton was complaining of numbness to his leg and reported that he had recently fallen due to his leg injury. Nurse Guice reviewed and evaluated Mr. Walton and found that Mr. Walton showed no muscle weakness or loss of muscle tone to his right leg. The scar on Mr. Walton's leg appeared well healed with no muscle atrophy. Mr. Walton was prescribed Motrin 400 mg for the pain related to his right leg. Nurse Guice also noted in the chart of October 1, 2018 that the physical exam findings of Mr. Walton did not warrant the symptoms being complained of by Mr. Walton.

The medical chart also reveals that Mr. Walton had a follow-up visit scheduled for October 29, 2018, and did not show up for his scheduled appointment.

Doc. 17-1 at 3–5; *see also* Doc. 17-6 at 3–5, Docs. 17-2—17-5.

## V.   DISCUSSION

### A.   The Medical Treatment Claim[2]

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Walton must prove both an objective and subjective component. The

---

[2]Defendants plead the affirmative defense of qualified immunity. Doc. 13 at 22. Qualified immunity does not extend to these defendants. *Hinson v. Edmond*, 205 F.3d 1264, 1265 (11th Cir. 2000) (holding that a physician employed by a private, for-profit corporation contracted to provide medical care to inmates "is ineligible to advance the defense of qualified immunity."); *Edwards v. Ala. Dep't of Corrs.*, 81 F.Supp.2d 1242, 1254 (M.D. Ala. 2000) (holding that a private entity contracting with a state to provide medical services to its inmates "is not entitled to qualified immunity…."); *see also Richardson v. McKnight*, 521 U.S. 399, 408–12 (1997) (holding that because of the influence of market forces on private employers qualified immunity did not extend to prison guards who were employed by a private, for-profit corporation that had contracted with the state to manage the prison). To the extent Walton asserts § 1983 official capacity claims against Defendants Driggers and Guice, courts generally consider these claims as being brought against the medical provider as the private employer rather than the government officer or agency for which the privately employed individuals provided services during the relevant time period. *See, e.g., Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) (stating that official capacity claims against privately-employed nurses are "tantamount" to claims against the private medical contractor); *Bingham v. Baker*, 2016 WL 8711599, at *4 (N.D. Ill. Apr. 15, 2016) (explaining that official capacity claims against two employees of a private prison healthcare vendor "are essentially claims against [the medical contract provider]"); *Woodruff v. Ridings*, 2019 WL 4126072, at *2 (W.D. Ky. Aug. 29, 2019) (finding the inmate-plaintiff's official-capacity claim against the jail nurse as brought against her employer, the jail's medical provider); *Miller v. Jones*, 2019 WL 4252821, at *2 (W.D. Ark. Aug. 7, 2019) (dismissing official capacity claims against private contract medical provider employees because the complaint failed to identify any custom or policy of the private entity which held the prison medical contract); *Frey v. Reams*, 2018 WL 582400, at *5 (D. Colo. Jan. 29, 2018) (stating that an official capacity claim against a doctor employed by private contract medical provider is the equivalent of a claim against that entity).

objective element requires Walton to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (quotation marks and citation omitted).

The subjective component of Walton's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835.

> The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970, 128 L.Ed.2d 811. In interpreting *Farmer* and *Estelle*, this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott [v. Foley]*, 182 F.3d [1248] at 1255 [11th Cir. 1999]; *Taylor [v. Adams]*, 221 F.3d [1254] at 1258 [(11th Cir. 2000)(stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it  is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because  they  involve  life- threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The seriousness of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have  held that [t]he tolerable length  of delay in providing medical attention depends on the nature of the medical need  and  the reason for the delay. Consequently, delay in medical treatment must  be interpreted  in the context of the seriousness of the medical need,

deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id.* at 1188-89 (quotation marks and citations omitted) (footnotes omitted). Further "whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poa*g, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks and citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Assuming Walton's condition constitutes a serious medical need, he presents no evidence sufficient to create a genuine issue of disputed fact regarding the claim that Defendants Driggers and Guice acted with deliberate indifference to his medical needs. He contends that Defendants Driggers and Guice failed to re-suture his stitches, denied him therapy, and failed to send him to a specialist for continued pain and discomfort from his leg injury. Walton, however, has not shown that Defendants Guice or Driggers engaged in 'acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs'" necessary to prevail on his allegation of inadequate medical care. *Hamm*, 774 F.2d at 1574-75 (citing *Estelle*, 429 U.S. at 106) (further citation omitted). Though "[a] 'doctor's decision to take an easier and less efficacious course of treatment' may constitute

deliberate indifference; . . . a mere difference of opinion between the doctor and a prisoner as to the proper diagnosis or course of treatment will not." *Wallace v. Sheriff*, 518 F. App'x 621, 622 (11th Cir. 2013) (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)).

While Walton claims he should have received therapy, had stitches re-sutured, and been referred to a specialist, he presents no evidence to support these contentions. Walton submits no evidence that the conduct or actions of Defendants Driggers and Guice about which he complains failed to meet appropriate professional standards. The only evidence concerning these allegations is Walton's sworn Complaint. Moreover, in his sworn affidavit in opposition to Defendants' written report, Walton concedes each time he submitted a sick call request he was seen by a nurse and referred to a doctor "as many times as [his] medical records show." Doc. 23 at 4. And Walton's medical records confirm he was seen numerous times by medical staff at Staton's healthcare unit in response to his requests for medical care related to complaints about his leg including medical profiles and pain medication. Docs. 17-2—17-5. This evidence shows that Walton received significant medical care while at Staton. "Although [Walton] may have desired different modes of treatment, the care [Defendants Driggers and Guice] provided did not amount to deliberate indifference." *Hamm*, 774 F.2d at 1574-75 (*citing Bass v. Sullivan*, 550 F.2d 229, 231-32 (5th Cir. 1977.). Additionally, while there is no evidence that Walton's injury required a referral to an outside specialist, that he did not receive such a referral does not amount to deliberate indifference. A failure to refer an inmate to an outside medical provider for evaluation does not, without more, amount to a constitutional violation. *Amarir v. Hill*,

243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."); *Dixon v. Jones*, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate did not constitute deliberate indifference).

The undisputed evidence reflects Walton received timely and appropriate access to prison medical staff while at Staton who examined and treated him for his leg injury. The record demonstrates medical personnel at Staton responded to Walton's complaints and provided medical care for him consistent with his medical history. Their responses to his condition, as attested to by Defendants Driggers and Guice and which Walton has not disputed, were reasonable and appropriate. Walton's conclusory assertions that he received inadequate treatment do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead v, Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (holding that "[a]lthough [Plaintiff] attempts to overcome summary judgment by offering his own sworn statement[s] . . . to support his allegations, the contemporaneous medical records and opinions of the examining medical [professionals] show that this purported evidence is baseless."); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (where a party's story "is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The record is therefore devoid of evidence—significantly probative or otherwise—showing that Defendants Driggers and Guice acted with deliberate indifference to a serious medical need experienced by Walton. *Farmer*, 511 U.S. 825; *Quinones*, 145 F.3d at 168. Defendants Driggers and Guice are therefore due to be granted summary judgment on Walton's Eighth Amendment claim.

### B.    Defendant Corizon

Walton brings this action against Corizon which previously held the contract to provide medical care to inmates in custody of the ADOC. To the extent Walton generally claim that Defendant Corizon, through the actions of the medical providers at Staton, acted with deliberate indifference to his serious medical needs, the law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks and citation omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). The Eleventh Circuit has extended that rule to private corporations like Defendant Corizon. *See, e.g., Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Where the state and the entity enter such a contractual agreement, the private healthcare company is a "person" acting under color of state law, and thus may be liable under § 1983. *Howell v. Evans*, 922 F.2d 712, 723-24 (11th Cir.) *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994) (internal citation omitted). To hold a defendant liable as a supervisory official, a plaintiff must show that

"the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269.

Walton presents no evidence which indicates Corizon was involved in the constitutional deprivations about which he complains. Thus, Corizon's liability must arise from another source. The analysis to be applied to the potential liability of Corizon is the same as that applied to municipalities under the Supreme Court's decision in *Monell*, 436 U.S. 658. Under *Monell*, to hold Corizon liable for the deliberate indifference of its contract physicians and other medical personnel, Walton must show that the medical providers, in providing constitutionally inadequate treatment to him, were implementing official Corizon policy or unofficial customary practice. *Id*. at 695. Additionally, before liability can be imposed, Walton must show that the policy or custom was the root cause of the constitutional violation. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). Thus, it is clear that not only must there be some degree of "fault" on the part of Corizon in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation. *Id*. at 823.

The evidence reflects that Corizon formerly held the contract to provide medical services for inmates incarcerated in the ADOC and that it was the provider at Staton during a portion of the time relevant to the claims presented. Walton, however, does not identify or challenge any policy of Corizon; instead, he only challenges the treatment provided by nurses formerly employed under Corizon. As the Court has determined, neither Defendant

Driggers nor Defendant Guice acted act with deliberate indifference.  Defendant Corizon

is, therefore,  due to be granted summary judgment. *See Hartley,* 193 F.3d at 1269.

## VI.    CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1. Defendants' Motion for Summary Judgment (Doc. 17) be GRANTED.

2. Judgment be ENTERED in favor of Defendants

3.  This case be DISMISSED with prejudice.

4.  Costs be TAXED against Plaintiff.

It is ORDERED that by **June 27, 2022**, the parties may file objections to this

Recommendation. The parties must specifically identify the factual findings and legal

conclusions in the Recommendation to which objection is made.  Frivolous, conclusive or

general objections will not be considered by the Court. This Recommendation is not a final

order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in

accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by

the District Court of legal and factual issues covered in the Recommendation and waive

the right of the party to challenge on appeal the District Court's order based on unobjected-

to factual and legal conclusions accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.

1982); 11TH Cir. R. 3–1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982);

*see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 13th day of June 2022.

/s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE